656 So.2d 1110 (1995)
FIRST NATIONAL BANK OF JEFFERSON PARISH
v.
Ralph DAZET.
No. 95-CA-98.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
*1112 Anita M. Warner, Hibernia Nat. Bank, Lending Law Div., New Orleans, Irl R. Silverstein, Gretna, for plaintiff-appellee First Nat. Bank of Jefferson Parish.
P.J. Stakelum, III, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, for defendants and plaintiffs-in-reconvention/appellants John X. Wegmann, III, Philip A. Garrett and Wegmann-Dazet & Co., A Professional Corp.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
KLIEBERT, Chief Judge.
Appellants, John X. Wegmann, III (Wegmann), Philip Garrett (Garrett), and Wegmann, Dazet and Company, a professional corporation (Wegmann-Dazet), appeal a trial court's judgment dismissing their reconventional demand filed against the First National Bank of Jefferson Parish (FNJ). We affirm.
On February 21, 1991, FNJ filed suit against Ralph A. Dazet ("Dazet"), for $28,716.77, together with interest and attorney's fees due on a loan made by Dazet represented by a promissory note dated September 23, 1987, executed by Dazet in the original amount of $41,710.33. On May 7, 1991, a default judgment was entered in favor of FNJ against Dazet for the amount claimed. On April 15, 1991, Dazet and his wife filed a Chapter 7 bankruptcy proceeding in the U.S. District Court for the Eastern District of Louisiana.
Thereafter FNJ filed a supplemental and amending petition against Wegmann-Dazet, J. Fred Woessner, Francis Bologna, Wegmann, and Garrett, alleging that each of these defendants had executed a continuing guaranty in January, 1980 to guarantee Dazet's indebtedness up to $50,000.00 each. Appellants answered FNJ's suit denying any liability and asserting the affirmative defenses of mistake, error, extinguishment, and reformation. In addition, appellants filed a reconventional demand against FNJ asserting that FNJ exercised bad faith and caused damage to them in attempting to enforce the continuing guaranties in an effort to collect from them the amounts due on the delinquent Dazet loan.
After a bench trial on the merits, the trial judge rendered judgment dismissing FNJ's suit against appellants, dismissing appellants' reconventional demand against FNJ, and assessing all costs against FNJ. Wegmann, Garrett, and Wegmann-Dazet appeal the dismissal of their reconventional demand. FNJ did not appeal.

FACTS
In 1980, Continental Bank made loans for $50,000.00 each to Wegmann, Dazet, Bologna, Woessner, and Garrett, the original shareholders of Wegmann-Dazet, a professional accounting corporation. In connection with these loans, each shareholder and the corporation executed a continuing guaranty in favor of the Continental Bank, its transferees, or assigns for the payment in full, of any indebtedness, direct or contingent, secured or unsecured, of each shareholder (including Dazet) up to the amount of $50,000.00 each, whether then due or to become due and whether then existing or thereafter arising. Each continuing guaranty executed at that time provided that the guaranty was absolute and complete, and that the guaranty would continue in force until written notice of its discontinuance was delivered to one of the executive officers of the bank.
In addition to his shareholder loan, the Continental Bank also made various personal loans to Dazet for his personal use.
On January 20, 1981, each shareholder, including Dazet, made an additional $20,000.00 loan with the Continental Bank, thereby increasing the so-called "shareholder" loans to $70,000.00 each. In addition, on August 24, 1981, Dazet made another personal loan for $30,000.00 with the Continental Bank.
Appellants, together with the other shareholders of Wegmann-Dazet, moved their banking relationship in September 1981 to the First National Bank of Commerce in Jefferson Parish and obtained loans from the First National Bank of Commerce to pay off their shareholder loans at Continental Bank. Although the shareholder loans at Continental *1113 Bank were paid off at that time, the continuing guaranties executed by the shareholders remained in the Continental Bank loan files.
In 1982, Continental Bank merged with FNJ and Continental's loan files, together with the continuing guaranties executed in 1980, were transferred to FNJ. After the merger, Dazet continued to make personal loans with FNJ. All of these personal loans, with the exception of one loan secured by a second mortgage on Dazet's residence, were unsecured. None of the loan documents completed in connection with Dazet's loans with FNJ mentioned or referred to the continuing guaranties that had been executed in 1980.
The FNJ loan made to Dazet on September 23, 1987 for $41,710.33 was also unsecured and no mention or reference to the 1980 continuing guaranties or any guarantors was made on the loan application for that loan. The 1987 loan was originally due on September 23, 1988, extended to September 23, 1989, and extended again to September 23, 1990. In early 1991, Dazet informed John Strough, his loan officer at that time, that he planned to file for bankruptcy. The loan was then transferred by Strough to Rod Jordy of the special assets division of FNJ, due to the severe delinquency of the loan and the pending bankruptcy action of Dazet.
After the filing of the original suit by FNJ against Dazet and the filing of Dazet's bankruptcy, FNJ filed a complaint in Dazet's bankruptcy proceeding contesting the dischargeability of the loan made by Dazet for $41,710.33 on September 23, 1987. FNJ subsequently settled its claim against Dazet for $5,000.00 which was approved by the U.S. Bankruptcy Court. The settlement reserved all rights of FNJ to proceed with its claims in this state court lawsuit against the appellants and the other defendants.
On April 21, 1992, FNJ, through its attorney, made written demand on the appellants to satisfy the indebtedness of Dazet under the continuing guaranties executed by the appellants. Subsequently, on May 11, 1992, FNJ filed its amending and supplemental petition against the guarantors, including appellants, who had executed the continuing guaranties in 1980.
Trial on the merits proceeded against appellants only, with FNJ reserving its rights against the other defendants.
In this appeal, appellants argue that the trial court erred in failing to find that FNJ exercised bad faith in its efforts to collect the amounts owed on the Dazet loan by enforcing the continuing guaranties, in violation of Louisiana Civil Code articles 1759, 1983, and 1997. Appellants further argue that the trial court should have assessed FNJ with damages sustained as a result of FNJ's bad faith efforts.
A continuing guaranty is equivalent to a contract of suretyship. First National Bank of Crowley v. Green Garden, 387 So.2d 1070 (La.1980). Contracts have the effect of law for the parties and must be performed in good faith. La.C.C. art. 1983. Good faith governs the conduct of parties to a contract in whatever pertains to the obligation. La. C.C. art. 1759.
A party is in bad faith if he intentionally and maliciously fails to perform his obligation. Bad faith has been defined as involving actual or constructive fraud or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. Bond v. Broadway, 607 So.2d 865 (La.App. 2nd Cir.1992), writ denied, 612 So.2d 88 (La. 1993). Bad faith implies the conscious doing of a wrong for dishonest or morally questionable motives. LSA-C.C. art. 1997 provides as follows:
Obligor in bad faith
An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.
* * * * * *
(b) an obligor is in bad faith if he intentionally and maliciously fails to perform his obligation.
(d) This Article uses the term "bad faith" rather than "fraud," the term used *1114 in C.C. Art. 1934 (1870). The French version of that Article used "dol," which is not exactly fraud. Moreover, the same term of art should not be used to designate two different things. In the context of vices of consent, "fraud" means a stratagem or machination to take unfair advantage of another party. "Bad faith" better conveys the intended meaning here, that is, an intentional and malicious failure to perform. This includes most of the meaning of the French "dol". A truly fraudulent failure to perform of course, would constitute bad faith under this Article.
In this case, the continuing guaranties at issue were not limited or restricted on their face to the shareholder loans originally made in 1980 with Continental Bank. The language used in these continuing guaranties evidence the guarantors' intent to secure any of Dazet's debts to Continental Bank, or its transferees or assigns, up to the dollar limit of $50,000.00. In addition, the guaranties specifically provided that the guaranties would remain in effect until written notice of their discontinuance was delivered to the said bank.
Therefore, on the face of the continuing guaranties, FNJ did not act in bad faith in pursuing collection of Dazet's debt from the appellants as guarantors. Appellants argue, however, that FNJ should be charged with the knowledge of Donald Weekly, the original loan officer at Continental Bank who arranged the shareholder loans in 1980. Weekly handled the appellants' loans during the time that Continental Bank was lending money to appellants for business purposes and to Dazet for his personal use. After the merger in 1982, Weekly worked for FNJ as a loan officer until August, 1983.
Weekly testified that at the time the original shareholder loans were made, it was not his intention to apply the continuing guaranties to any loan other than the shareholder loans and that the guaranties were given only to secure the shareholder loans. Weekly's intentions were not documented in the files. Weekly also testified that he never indicated to anyone at FNJ that the guaranties were being used to secure the loans to Dazet other than the shareholder loans. Weekly further testified that appellants never requested the return of their continuing guaranties, despite the fact that appellants were very knowledgeable about finance and banking matters. Weekly never informed any subsequent FNJ loan officer that the guaranties were limited to the shareholder loans. It is true that knowledge of an officer of a corporation, obtained in conduct of its business, is imputable to the corporation. General Motors Acceptance Corporation v. Crain Chevrolet-Olds-Pontiac, Inc. et al, 595 So.2d 346 (La.App. 2nd Cir.1992). However, the question is whether FNJ's actions in filing suit against the guarantors was prompted by an honest mistake or an honest belief that it was asserting rights available to it under the continuing guaranties or whether FNJ's actions were prompted by some sinister, dishonest, or morally questionable motive.
The trial court found that FNJ had the right to rely on Louisiana cases which have held that a continuing guaranty with no restrictive language, as the case here, allows a lender to use the guaranty for any loan made by the debtor. The trial court further found that it could not find FNJ acted in bad faith. Based on the record before us, we cannot say that the trial court's finding in this regard was clearly error. In reaching our conclusion, we are also not impressed with the appellant's argument that the failure of FNJ to call Rod Jordy creates an inference that Jordy's testimony would have been unfavorable to FNJ. The record does not indicate that Mr. Jordy was subpoenaed to testify for FNJ and appellants have not argued nor does the record reflect that the witness was not equally available to them. On their reconventional demand, appellants had the burden to prove FNJ's bad faith and if they felt Jordy's testimony would have been favorable to their case, they should have subpoenaed him to testify.
For the reasons assigned, we affirm the trial court's judgment dismissing appellants' reconventional demand against FNJ. Appellants are cast for all costs.
AFFIRMED.