677 So.2d 648 (1996)
BALLARD'S INC., Plaintiff-Appellee,
v.
NORTH AMERICAN LAND DEVELOPMENT CORPORATION, et al., Defendants-Appellants.
No. 28437-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Joe D. Guerriero, Monroe, for Defendants-Appellants.
Francis C. Broussard, Monroe, for Third-Party Defendant.
Clifford L. Lawrence, Jr., Monroe, for Plaintiff-Appellee.
Before MARVIN, NORRIS and WILLIAMS, JJ.
*649 NORRIS, Judge.
The defendants, Nouri E. "Ed" Hakim and his company, North American Land Development Corp. ("NALD"), appeal a judgment in favor of the plaintiff, Ballard's Inc., for $18,164.20 due on an open account and $6,000.00 in attorney fees. Hakim and NALD also appeal the district court's judgment rejecting their reconventional demand against Ballard's and their third party demand against Edwards Air Conditioning, Mr. Hakim's mechanical contractor. Ballard's has answered the appeal, seeking additional attorney fees for the appeal. Finding no manifest error, we affirm the judgment insofar as it sustains the principal demand and rejects the incidental demands. We amend to increase Ballard's attorney fees for the appeal.

Factual and procedural background
The plaintiff, Ballard's, is an air conditioning distributor in Shreveport; it carries the York line of equipment. Ballard's president, Ed Roper, testified that he sold equipment primarily to authorized dealers, who in turn sold it to users, three-fourths of whom were homeowners.
The defendant, Ed Hakim, is a businessman in Monroe; he is a principal in NALD, as well as in Mini Togs Inc., which makes children's clothes. Hakim was using a mechanical contractor, Edwards Air, to repair and install air conditioning equipment at its plants and rental properties. Edwards Air had an account with Ballard's, but because of credit concerns it was for relatively small amounts.
In May 1990, Hakim expressed an interest in ordering some "big-ticket items" like chillers for his plants; he wanted to buy directly from a distributor. He got a quote from another company, Trane, but because Edwards Air's owner, William T. Edwards, preferred the York line, Mr. Hakim met with Ballard's salesman, Steve Menhennett, and Edwards. After negotiations, Ballard's agreed to sell directly to Mr. Hakim or his corporations. However, because of its usual policy of selling only to licensed dealers, and because it feared repercussions from competitors if it sold directly to a customer, Ballard's would invoice the equipment through Edwards Air; Mr. Menhennett assured Ballard's that Mr. Hakim as the ultimate purchaser, would be responsible.
In June 1990 NALD ordered a 75-ton dual compressor chiller from Ballard's; it was invoiced to Edwards Air, but delivered to NALD, which paid Ballard's directly the invoice price of $25,480.00. Mini Togs placed the next order, for 16 supply grilles, in December 1990. William Edwards actually signed the order, as he was authorized to do, and apparently Mini Togs paid Ballard's directly.
Beginning with the next order, for several indoor units in June 1991, Ballard's shipped the equipment to Mini Togs but invoiced it to Edwards Air. On this and two subsequent orders, Ballard's received payment from Edwards Air; William Edwards and Mr. Hakim both testified that Mini Togs or NALD would pay Edwards, and Edwards would then pay Ballard's.[1]
The transaction that gave rise to this suit was the October 1991 sale of a 27-ton liquid chiller for Mr. Hakim's personal residence on University Avenue. This was invoiced to Edwards Air and shipped to Mini Togs, but was subsequently placed on Mr. Hakim's premises. Mr. Hakim never paid Ballard's for it; he testified that he had already paid Edwards Air the invoice amount by advances and overpayments on other projects.[2]
Ballard's sent demand letters pursuant to La.R.S. 9:2781 to both Mr. Hakim and NALD on May 21, 1992. Mr. Hakim responded by presenting a copy of an Edwards Air service invoice, dated November 8, 1991, which showed that NALD paid Edwards $20,000 on that date, and a copy of the canceled check from NALD to Edwards Air for $20,000.00. The canceled check, however, *650 bears a notation that refers to an Edwards Air service invoice (No. 1757) which states that the $20,000 is for "Draw on Jonesboro Mfg.," another job that Edwards was performing for Mr. Hakim at the time.[3] When Ballard's did not receive payment within 15 days, it filed the instant suit on open account in June 1992. It claimed the amount due and reasonable attorney fees.
By answer Mr. Hakim and NALD denied they owed the account; they also filed a third party demand for indemnity against William Edwards, urging that he failed to pay Ballard's with proceeds of NALD's payment to Edwards Air.
Some months after suit was filed, Mr. Hakim requested from Ballard's copies of the invoices that constituted the open account. Examining Ballard's invoices, Mr. Hakim noticed these invoices to Edwards Air were approximately 10% lower than the invoices that Edwards Air had sent NALD for the same equipment. Mr. Hakim insisted that he had done business with Edwards Air only on the condition that Edwards Air sell him the equipment at its cost. Mr. Hakim and NALD therefore filed a reconventional demand against Ballard's, seeking damages for unfair trade practices and fraud.
Trial took place over two days in November 1993 and September 1994. As noted, the district court found that Ballard's had proved that there was an open account and that the 27-ton chiller was sold and delivered to NALD and Mr. Hakim. The court also rejected the defense of payment, finding it unbelievable that Mr. Hakim would overpay such a bill by nearly $2,000. The court therefore rendered judgment for the plaintiff on the principal demand. The court also found that the 10% markup on Edwards Air's invoices to NALD was equivalent to "bonuses, commissions or other incentives from the manufacturer" and was a "normal business practice" that did not amount to unfair trade. The court therefore rejected NALD and Mr. Hakim's incidental demands.

Applicable law
Title Nine of the Revised Statutes provides for collecting open accounts:
§ 2781. Open accounts; attorney fees; professional fees; open accounts owed to the state
A. When any person fails to pay an open account within fifteen days after receipt of written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. * * *
C. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. * * *
D. As used in this Section, "person" means an individual, association, corporation, partnership, trust, or any other public or private legal entity.
(emphasis added)
An open account is analogous to a credit account. Jacobs v. Loeffelholz, 94-1123 (La.App. 4th Cir. 12/15/94), 647 So.2d 1282. The district court's findings that an open account exists, and that the statement thereof is correct, are subject to the manifest error rule. Chachere v. Bren Lynn Corp., 561 So.2d 140 (La.App. 3d Cir.1990). Under this standard, if there are two permissible views of the evidence, the district court's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La.C.C. art. 1953. To *651 prove fraud by silence or inaction, the claimant must show there was a duty to disclose information. Greene v. Gulf Coast Bank, 593 So.2d 630 (La.1992). Fraud is proved by a preponderance of evidence and may be established by circumstantial evidence. La. C.C. art. 1957. The district court's findings with respect to a claim of fraud are subject to the manifest error rule. Winegeart v. Texas Indus. Inc., 390 So.2d 265 (La.App. 3d Cir. 1980), writ denied 396 So.2d 886 (1981).

Discussion: The Principal demand
By their first two specifications of error, Mr. Hakim and NALD urge the district court erred in finding them liable on the open account because Ballard's "sued the wrong entity and/or person" in that the account was actually owed by Edwards, not by Mr. Hakim or NALD. In support they contend there was no evidence that they were "invoiced, billed, or submitted any purchase order by letter or otherwise, for the item in question." Br., 6. Citing the testimony of Ballard's president, Mr. Roper, who stated that he did not sell to non-dealers, and that he sold the 27-ton chiller to "an entity composed of Hakim and Edwards," they further argue that because no such entity existed, the true owner of the account was Edwards. The thrust of the argument is that Ballard's never intended to hold Mr. Hakim and NALD responsible for payment of this purchase, but decided to do so when Edwards defaulted in his own payment to Ballard's.
This record, however, is substantial, and it shows that despite Ballard's normal policy to sell only to dealers, Mr. Hakim fervently wished to buy directly from a distributor. R. pp. 424, 452. Mr. Menhennett, Ballard's salesman, verified that the company occasionally complied with such requests. Dep., 28. The documentary evidence shows that in June 1990, Mr. Hakim issued a purchase order to Ballard's for a compressor chiller on NALD's behalf, Ballard's invoiced it to Edwards Air, and NALD paid Ballard's directly. Ex. P-2; R. p. 123. This evidence is sufficient to show that Ballard's kept an account in NALD's name.
Moreover, Mr. Menhennett stated in deposition that Ballard's was selling to Mr. Hakim and NALD directly, but billing Edwards Air lest competing dealers find out that Ballard's was making large sales without dealers. Dep., 36-37. He also stated that Mr. Hakim personally ordered the 27-ton chiller. Dep., 19. Mr. Edwards testified that although he never heard Mr. Hakim say he would directly pay Ballard's, Mr. Hakim "had been [personally responsible for purchases] all along on everything else." R. p. 254. Mr. Roper verified that he did not sell the 27-ton chiller to Edwards because of the latter's credit problems. R. p. 111-112.
This evidence is sufficient to support the trial court's finding that Ballard's extended credit to NALD and Mr. Hakim and that they used it to purchase the 27-ton chiller. R.S. 9:2871 C.
As noted, Mr. Hakim cites the testimony in which he vehemently denied making this purchase from Ballard's, but insisted he bought it from Edwards, who in turn bought it from Ballard's. There is also the documentation that Ballard's invoices were usually addressed to Edwards Air and shipped to Mini Togs or NALD. At best, this is some evidence that Ballard's was actually making these sales to Edwards. However, Mr. Hakim's testimony conflicted with that of Mr. Menhennett and Mr. Edwards; the court's credibility call is entitled to great weight. Rosell v. ESCO, supra. In light of the other testimony and exhibits summarized above, the whole record will not undermine the district court's factual finding that the account was for, in reality, NALD and Mr. Hakim and that they used it. Rosell v. ESCO, supra.
At trial and at oral argument, Mr. Hakim and NALD contended that they paid for the 27-ton chiller by check for $20,000 made out to Edwards on November 8, 1991. However, Edwards denied this, describing the check as an advance for work he was performing on the Jonesboro job. R. pp. 386-388. The notation on the service order, quoted earlier, supports this. The service order connected with the check, Ex. P-14-A, was originally made out for $15,000 but raised to $20,000; it is not logical to think that Mr. Hakim would pay $15,000 for an invoice of $18,164.24. The district court explicitly accepted Edwards's *652 explanation that he asked Mr. Hakim to raise the amount in case Edwards needed extra cash while Mr. Hakim was out of the country on vacation. The court also rejected the inference that Mr. Hakim would overpay by nearly $2,000 the invoice in question. Notably, Mr. Hakim admitted he had not paid Ballard's for this chiller. R. pp. 444-445. On this record we cannot say the court was plainly wrong to find that the account was still unpaid.
Finally, NALD and Mr. Hakim urge they cannot be liable because no invoice was ever addressed to them. Br., 14. This contention lacks merit. The record shows that Ballard's sent them demand letters that complied with R.S. 9:2781. Sending a statutory demand letter to the parties who are ultimately found to be responsible for the account is sufficient notice. LaPorte, Sehrt, Romig & Hand, CPA's v. Gulf Island Operations Inc., 557 So.2d 359 (La.App. 4th Cir.), writ denied 561 So.2d 120 (1990). The judgment sustaining Ballard's principal demand on the open account will be affirmed.

The Incidental demands
By their third and fourth specifications of error, Mr. Hakim and NALD urge the court erred in not rendering judgment on their reconventional and third party demands, in light of the claim the Ballard's and Edwards Air "colluded * * * to defraud defendants/appellants and/or sister corporation of monies rightfully belonging to them instead of to William T. Edwards" in a "blatant conspiracy perpetrated by" Ballard's and Edwards Air. The thrust of the argument is that Ballard's credited Edwards with some $12,285.13 on sales of equipment from Edwards to NALD, Mini Togs, or both, but that this violated the express understanding that Edwards would sell at his cost to NALD and Mini Togs. In essence, they assert that Ballard's and Edwards conspired to generate duplicate invoices that deceived Mr. Hakim into thinking that he was buying the equipment at Edwards's cost.
The greater part of this substantial record explores the claim of fraud. There is no question that Mr. Hakim was adamant in wanting to buy direct from a distributor. He may have believed he had a deal to buy at the same price that Ballard's would quote to Edwards, and thus he agreed to pay Edwards a 10% fee. R. p. 425. There also is no question that Ballard's prepared two invoices for each sale to NALD: one at a higher price was sent to NALD, and the other, about 10% lower, was kept in Ballard's office and used to credit Edwards's account. Thus Edwards was getting a 10% credit from Ballard's. Mr. Roper explained that this was to compensate him in the event that warranty work was needed on the equipment; Edwards would be responsible for performing it. R. p. 97. Mr. Hakim admitted that Ballard's quoted a price on each item and he accepted it. R. p. 476. Notably, Mr. Menhennett never said he agreed to sell to Mr. Hakim at dealer cost, only that he would make a direct quote which Mr. Hakim could accept or reject.
Mr. Hakim testified that for the first purchase, the 75-ton compressor chiller, he may have had a lower bid from one of Ballard's competitors, but Mr. Menhennett convinced him that the York equipment from Ballard's had copper coils and was of superior quality. R. p. 425. Mr. Edwards testified that Ballard's quotes were always lower than the competitor's. R. p. 412. On this evidence, the district court was entitled find that NALD and Mr. Hakim accepted the lowest price from among the distributors solicited and thus did not sustain a "loss or inconvenience" because of Ballard's and Edwards Air's conduct, as required to prove fraud under art. 1953. Moreover, the court was entitled to find that Ballard's and Edwards Air did not receive an "unjust advantage" from their credit arrangement. Mr. Roper and Mr. Menhennett testified that such markups were standard in the industry. R.pp. 230-231; Dep., 7. Mr. Hakim even admitted it was "none of his business" how much money the distributor made. R.p. 476. We perceive no manifest error in the district court's refusal to find fraud. Rosell v. ESCO, supra.
In sum, Ballard's quoted a price for the equipment, Mr. Hakim accepted it; Ballard's delivered the described equipment and charged Mr. Hakim only the quoted price. *653 In the absence of fraud, the mere fact that Mr. Hakim now feels he could have made a better deal is not a matter for judicial redress; the courts will not relieve a litigant of what he later decides is a bad bargain. Hinterlang v. Usner, 215 La. 626, 41 So.2d 455 (1949); Ardoin v. Central La. Elec. Co., 318 So.2d 5 (La.1975); Tahoe Corp. v. P & G Gathering Systems Inc., 506 So.2d 1336, 1345 (La.App. 2d Cir.1987). The judgment rejecting NALD's and Mr. Hakim's incidental demands will be affirmed.[4]

Answer to appeal
By answer to appeal, Ballard's requests additional attorney fees incurred to defend the appeal. Attorney fees are appropriate when the creditor has complied with R.S. 9:2781 A, and additional attorney fees are authorized when the debtor appeals unsuccessfully. Tolmas v. Weichert, 616 So.2d 244 (La.App. 4th Cir.1993); Metropolis Inc. v. Hanson, 434 So.2d 1207 (La.App. 1st Cir. 1983). Recoverable fees are limited to services incurred to collect the debt, not to unrelated matters in litigation. Tolmas v. Weichert, supra. The fee must be reasonable, and the amount is regulated by the Rules of Professional Responsibility, Rule 1.5(a).[5]
In the instant case the appellants presented a fairly intricate case in their attempt to prove fraud; in brief, they have reconstructed each of the transactions between Ballard's, Edwards Air and Mr. Hakim from June 1990 through October 1991. Items for review by Ballard's attorney include not only the documents and the long trial transcript, but the transcript in another civil action.[6] In light of the amount of material subject to review, we will award an additional one thousand dollars in attorney fees for the defense of this appeal.

Conclusion
For the reasons expressed, the judgment is affirmed insofar as it sustains the plaintiff's principal demand and rejects the defendants' incidental demands. Appellate costs are assessed to appellants, Mr. Nouri E. "Ed" Hakim and North American Land Development Corp. The judgment is amended as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, BALLARD'S INC., and against the defendants, NORTH AMERICAN LAND DEVELOPMENT CORP. and NOURI. E. HAKIM, jointly and in solido, in the additional amount of One Thousand and 00/100 ($1,000.00) Dollars, for additional attorney fees in defense of the appeal.
AFFIRMED IN PART AND AMENDED.
NOTES
[1] Mr. Roper specifically recalled receiving one check from Edwards, for $16,391.11 in August 1991, for indoor heating/cooling units, and he assumed that NALD had paid Edwards for this. R. pp. 107-109.
[2] Mr. Edwards testified that Mr. Hakim refused to pay him because they had fallen into a disagreement over Edwards's refusal to falsify insurance loss claims. R. p. 252.
[3] That project was also the subject of litigation described in EEJ Inc. v. H.G. Angle Co., 24,773 (La.App.2d Cir. 5/5/93), 618 So.2d 566, writ denied 93-1982 (La. 10/29/93), 626 So.2d 1176, recon. denied (La. 12/10/93), 629 So.2d 1150.
[4] In their reconventional demand, NALD and Mr. Hakim claimed treble damages for unfair trade practices. R. p. 34. The district court rejected this claim and the appellants have not specifically assigned it as error. R. p. 69, Br., 2. While unfair trade practices are generally prohibited, La.R.S. 51:1405 A, the appellants have not shown unfair methods of competition or unfair or deceptive acts or practices under that statute. Notably, it would have been illegal for Ballard's to offer to sell equipment to NALD under cost, R.S. 51:422, but we are aware of no prohibition against selling at cost plus a dealer's commission, and for the reasons discussed in the text we do not consider it fraudulent conduct.
[5] Under this rule, the factors in assessing the reasonableness of a fee include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer, (3) the fee customarily charged in the locality for similar legal services, (4) the amount involved and the results obtained, (5) the time limitations imposed by the client or by the circumstances, (6) the nature and length of the professional relationship with the client, (7) the experience, reputation and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed or contingent.
[6] North American Land Dev. Inc. v. Edwards, No. 92-0839 in the Fourth Judicial District.