UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1013

CYNTHIA M. AIKENS; JACQUELINE BELFIELD; AMBER
CISNEY,

Plaintiffs - Appellants,

versus

MICROSOFT CORPORATION,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-
00-2132-JFM; CA-00-1332-MDL)

Argued: September 20, 2005          Decided: December 15, 2005

Before LUTTIG and GREGORY, Circuit Judges, and Robert J. CONRAD,
Jr., United States District Judge for the Western District of North
Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John Kerry Weston, SACKS & WESTON, Philadelphia,
Pennsylvania, for Appellants. David Bruce Tulchin, SULLIVAN &
CROMWELL, New York, New York, for Appellee. **ON BRIEF:** G. Stewart
Webb, Jr., VENABLE, L.L.P., Baltimore, Maryland; Thomas W. Burt,
Richard J. Wallis, Steven J. Aeschbacher, MICROSOFT CORPORATION,
Redmond, Washington; Joseph E. Neuhaus, Richard C. Pepperman, II,
Sharon L. Nelles, SULLIVAN & CROMWELL, New York, New York; Charles
B. Casper, Peter Breslauer, MONTGOMERY, MCCRACKEN, WALKER & RHOADS,
L.L.P., Philadelphia, Pennsylvania, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In November 1999, the United States District Court for the District of Columbia entered findings of fact in the United States Department of Justice's federal antitrust suit ("federal antitrust action") against Microsoft Corporation ("Microsoft").[1]  Shortly thereafter, in January 2000, the plaintiffs, Cynthia Aikens, Jacqueline Belfield, and Amber Cisney (collectively "the plaintiffs"), sued Microsoft in Louisiana state court on behalf of a putative class of Louisiana residents who had purchased Microsoft operating system software.  The plaintiffs claimed that, because of Microsoft's anti-competitive and monopolistic practices, they had paid more for Microsoft's operating software than they otherwise would have in a competitive market.  Microsoft removed the case to federal court, and the Judicial Panel on Multidistrict Litigation ("JPML") transferred the matter to the United States District Court for the District of Maryland ("the district court").  Subsequently, the district court denied the plaintiffs' motion to remand and later dismissed their causes of action for failure to state a claim under Louisiana law.  The plaintiffs appeal both rulings.

---

[1] In this proceeding, the Justice Department and various state attorneys general alleged that Microsoft had violated provisions of the Sherman Act, 15 U.S.C. § 1 et seq., and section 4 of the Clayton Act, 15 U.S.C. § 15.  See United States v. Microsoft Corp., 84 F. Supp. 2d 9, 12 (D.D.C. 1999).  Hereinafter, we will refer to this proceeding as "the federal antitrust action."

3

We affirm the district court's order denying the motion to remand, because we find that the court had jurisdiction over the claims of the class representatives based on diversity of citizenship under 28 U.S.C. § 1332 and over the claims of the other class members based on supplemental jurisdiction under 28 U.S.C. § 1367. Further, because the plaintiffs' complaint is devoid of any factual basis for the state law claims, we affirm the order of dismissal.

I.

The plaintiffs' complaint borrowed liberally from the findings of fact issued in the federal antitrust action. Specifically, the plaintiffs asserted that with the release of its Windows 98 operating system in 1998, Microsoft had achieved a monopoly over "the operating systems installed in virtually all Intel-compatible personal computers worldwide." J.A. 178. Further, the plaintiffs alleged that Microsoft was able to create and maintain this monopoly by intimidating potential competitors. As a result of these monopolistic practices, the plaintiffs asserted that Microsoft was able "to charge a substantially higher price for its software than that which could be charged in a competitive market." Id. In asserting these factual antitrust allegations, the plaintiffs did not cite any specific theory of liability or cause of action.

4

In addition to alleging antitrust violations, the plaintiffs also asserted that Microsoft was liable, under Louisiana law, for (a) bad faith breach of contract; (b) negligent misrepresentation; (c) fraudulent misrepresentation; (d) unjust enrichment; (e) breach of warranty concerning redhibitory defects; and (f) any other acts of negligence or violations of Louisiana law. J.A. 174-75. The plaintiffs offered no separate factual support for these additional state law allegations.

The plaintiffs, all indirect purchasers of Microsoft software,[2] concluded that they were entitled to damages, "including but not limited to, the difference between the price the class members actually paid for Windows 95, Windows 98, and Internet Explorer and the amount they would have paid if Microsoft was not an illegal monopoly." J.A. 179. The plaintiffs also sought "remuneration . . . of all sums by which Microsoft has been directly and indirectly unjustly enriched[,]" in addition to treble damages and reasonable attorneys fees. J.A. 180-82. In an apparent attempt to avoid federal diversity jurisdiction, the plaintiffs contended that they were not seeking recoveries in excess of $75,000 per class member. See J.A. 181.

---

[2]As indirect purchasers, the plaintiffs did not buy their operating system software directly from Microsoft but, instead, purchased the software from intermediaries such as retailers and wholesalers.

After the JPML transferred this action to the United States District Court for the District of Maryland in April 2000, the plaintiffs filed a motion to remand to the state court for lack of subject matter jurisdiction. In support of the motion, the plaintiffs argued that to the extent that they had limited their prayer for damages to no more than $75,000 per class member, there was no subject matter jurisdiction on the basis of diversity of citizenship. Further, the plaintiffs argued that there was no federal question jurisdiction because their antitrust allegations relied on Louisiana law and did not involve substantial questions of federal antitrust law. J.A. 188-89.

Concluding that it had original jurisdiction over the action, the district court denied the plaintiffs' motion to remand. First, the district court asserted jurisdiction on the basis of diversity of citizenship, concluding that the plaintiffs' collective prayer for remuneration or disgorgement of profits would yield a recovery well in excess of $75,000. Alternatively, the district court held that it had federal question jurisdiction because the plaintiffs' complaint raised substantial questions of federal antitrust law. Subsequently, Microsoft moved to dismiss the unjust enrichment claim under Federal Rule Civil Procedure 12(b)(6). The district court granted this motion, finding that the unjust enrichment claim was not supported by Louisiana law. Thereafter, Microsoft moved for dismissal and/or summary judgment of the remaining state law

6

claims.  The district court granted that motion in December 2004.  In so doing, the district court held that the plaintiffs had failed to raise any facts that would support those causes of action.  See J.A. 472-73.

II.

We first turn to the district court's order denying the plaintiffs' motion to remand.  This Court reviews questions of subject matter jurisdiction de novo.  Dixon v. Cogburg Dairy, Inc., 369 F.3d 811, 814 (4th Cir. 2004)(en banc).  The burden of demonstrating subject matter jurisdiction rests on the party seeking removal.  Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Because of the underlying federalism concerns, this Court must strictly construe removal jurisdiction.  Id.  "If federal jurisdiction is doubtful, a remand is necessary."  Id.

Pursuant to section 1441 of Title 28, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a)(2000).  In this case, Microsoft argues that removal was proper because the district court had original jurisdiction under 28 U.S.C. § 1331.  Section 1331 grants district

7

courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Microsoft also contends that the district court had original jurisdiction under section 1332 of Title 28. Under that provision, federal courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." Id. § 1332(a)(1).

A.

We believe that this court has jurisdiction over the claims of the class representatives based on diversity of citizenship under 28 U.S.C. § 1332 and over the claims of the other class members based on supplemental jurisdiction under 28 U.S.C. § 1367. It is undisputed that the parties are diverse, see J.A. 189, and we conclude that the amount in controversy is satisfied for the class representatives based on the provisions in Louisiana law governing the allocation of attorney's fees in class actions. Because attorney's fees in this class action, which would easily exceed $75,000, are awarded pursuant to the substantive state statutes under which the plaintiffs' causes of action accrue, and because under La. Code Civ. Proc. art. 595(A), the attorney's fees would be awarded entirely to the class representatives, the amount in controversy is satisfied for the class representatives. See In re

8

Abbott Labs., 51 F.3d 524, 526-27 (5th Cir. 1995) (holding, in a Louisiana antitrust class action, that the amount in controversy was satisfied for the class representatives because of article 595(A)). Supplemental jurisdiction then exists over the claims of the other class members. See id. at 527-29; see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2625 (2005) (ratifying Abbott Laboratories' holding with respect to supplemental jurisdiction).

The district court rejected this argument because it believed that in order to rely upon Abbott Laboratories, the plaintiffs' right to attorney's fees must derive from a substantive state statute, not just article 595(A), and it concluded that the plaintiffs did not rely on a substantive state statute that provided for attorney's fees. J.A. 446. Even assuming that the district court's narrow construction of Abbott Laboratories is correct, which the parties dispute, the district court's conclusion was still in error. Abbott Laboratories recognized, and the district court itself admitted, that Louisiana's antitrust statute awards mandatory attorney's fees as part of a prevailing plaintiff's recovery. See Abbott Laboratories, 51 F.3d at 526 (citing La. Rev. Stat. Ann. § 51:137); J.A. 446. Because the state antitrust statute is a substantive statute that provides for mandatory attorney's fees, the amount in controversy is satisfied under Abbott Laboratories.

9

The plaintiffs have one final argument. They claim that Count 47 of their complaint limits their requested damages to $75,000 and thus diversity jurisdiction does not exist even if the attorney's fees would otherwise satisfy the amount in controversy requirement. Count 47 states:

> Plaintiffs and the plaintiff class seek monetary relief as provided by Louisiana law. Plaintiffs and each member of the class have individually incurred damages under the laws of Louisiana in an amount less than $75,000. Neither of the Plaintiffs, nor any member of the class seeks damages exceeding $75,000, nor do their damages individually exceed $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder. Plaintiffs do not seek any form of "common" recovery, but rather individual recoveries not to exceed $75,000 for any class member, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder.

J.A. 181. We conclude, however, that the language in Count 47 is insufficient to limit the plaintiffs' possibility of recovery to $75,000 for the purposes of determining the amount in controversy and that diversity of citizenship jurisdiction therefore exists.

It is true that a plaintiff can "resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294 (1938). However, as courts have recognized, this dicta in St. Paul Mercury was premised on the notion that plaintiffs would be bound by the amount alleged in the ad damnum clause of the complaint, see De Aguilar v. Boeing Co., 47 F.3d 1404, 1410 (5th Cir. 1995), a

10

premise that is no longer uniformly true and that is clearly not true in Louisiana, where La. Code Civ. Proc. art. 862 provides that courts can grant relief to which a successful plaintiff is entitled, regardless of the ad damnum clause, see Manguno v. Prudential Property & Casualty Insurance Co., 276 F.3d 720, 722 (5th Cir. 2002). This gives rise to the concern that plaintiffs will use a low ad damnum clause to avoid removal, secure in the knowledge that state law will allow them to recover more after removal would no longer be timely. See De Aguilar, 47 F.3d at 1410. Courts have resolved this concern by requiring plaintiffs seeking to defeat removal jurisdiction in states where the ad damnum clause at the time of filing is not legally binding to "file a binding stipulation or affidavit with their complaints." Id. at 1412.

The plaintiffs do not appear to dispute these general principles, but instead argue that Count 47, in which they disclaim any intent to seek more than $75,000, is not just an ad damnum clause, but is also a "judicial confession" under Louisiana law that should have the same legal effect as a De Aguilar stipulation -- namely, it should prevent plaintiffs from receiving more than $75,000. However, the precise language of Count 47 does not support their assertion. Count 47 alleges that plaintiffs "have individually incurred damages . . . less than $75,000" and do not "seek[] damages exceeding $75,000." J.A. 181. It does not,

11

however, stipulate that the plaintiffs will not <u>accept</u> more than $75,000 if the court awards it. And since Count 47 also explicitly notes that the plaintiffs "seek monetary relief as provided by Louisiana law," <u>id.</u>, and article 862 provides that, regardless of the complaint, a court "shall grant the relief to which the party in whose favor [judgment] is rendered is entitled," it is possible that the court could award the plaintiffs more than $75,000 even though they do not seek it. Thus, the Fifth Circuit has held that, given Louisiana law, language similar to Count 47 does not suffice to defeat diversity jurisdiction. <u>See</u> <u>Manguno</u>, 276 F.3d at 722, 724 (holding, because of article 862, that language in the complaint stating that "the amount in controversy does not exceed $75,000" and that "plaintiffs are not seeking attorneys fees" was insufficient to defeat diversity jurisdiction based on attorneys' fees).[3]

Thus, we conclude that the district court did not err in denying the motion to remand for lack of jurisdiction. The amount

_____

[3]Moreover, it is questionable whether Count 47 would have been sufficient even if it had disclaimed any ability to accept more than $75,000. There would remain a conflict between article 862, which grants the plaintiff the relief to which he is entitled, even if it was not demanded in the complaint, and <u>De Aguilar</u>'s holding that a binding stipulation suffices to prevent federal jurisdiction. We believe the best way to resolve this conflict may be to require that the stipulation be made outside of the text of the complaint (but of course still within the pending proceedings), so that any state laws concerning the ad damnum clause are not implicated. This position is supported by language in <u>De Aguilar</u>. <u>See</u> 47 F.3d at 1412 (stating that plaintiffs "must file a binding stipulation or affidavit <u>with their complaints</u>" (emphasis added)).

in controversy is satisfied because the Louisiana antitrust statute provides for mandatory attorney's fees that article 595(A) directs shall be awarded to the class representatives. Because Count 47 of the plaintiff's complaint does not effectively surrender that entitlement under Louisiana law, we hold that diversity of citizenship jurisdiction exists with respect to the class representatives and that supplemental jurisdiction exists with respect to the other class members.

## B.

Because we conclude that diversity jurisdiction exists, we find it unnecessary to reach the district court's alternative basis for finding original jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331.

## III.

The plaintiffs also appeal the district court's order dismissing their non-antitrust state law claims. Although the factual allegations in the complaint related entirely to Microsoft's anti-competitive and monopolistic practices, the plaintiffs also concluded that Microsoft was liable for unjust enrichment, bad faith breach of contract, misrepresentation, and breach of warranty concerning redhibitory defects.

13

We review the district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo. Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997). In considering the motion to dismiss, we will accept as true the plaintiffs' factual allegations and construe them in the light most favorable to the plaintiffs. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Dismissal under Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## A.

The district court properly dismissed the plaintiffs' unjust enrichment claim. Under Louisiana Civil Code Article 2298, "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code Ann. art. 2298 (West 2000). However, the unjust enrichment remedy is "subsidiary" in nature and "shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." Id. Indeed, "where there is a rule of law directed to the issue, [an unjust enrichment claim] must not be allowed to defeat the purpose of said rule." Coastal Env't Specialists, Inc. v. Chem-Lig Int'l, Inc., 818 So. 2d 12, 19 (La. Ct. App. 2001).

14

The plaintiffs sought unjust enrichment damages for Microsoft's "monopolistic, anti-competitive practices." J.A. 180. As indirect purchasers, however, the plaintiffs cannot sue to recover monetary damages under Louisiana antitrust law. See Free v. Abbott Labs., Inc., 176 F.3d 298, 301 (5th Cir. 1999) (finding that Louisiana courts would follow the federal Illinois Brick rule barring indirect purchaser suits for monetary damages). Therefore, to the extent that the plaintiffs cannot sue for monetary damages under Louisiana antitrust law, they cannot employ a subsidiary unjust enrichment claim to circumvent this rule. See Coastal Env't Specialists, Inc., 818 So. 2d at 19. Accordingly, we affirm the district court's dismissal of the unjust enrichment claim.

B.

Next, the plaintiffs assert that the district court erred in dismissing their bad faith breach of contract claim. Under Article 1997 of the Louisiana Civil Code, "[a]n obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform." In order to prove bad faith, the plaintiff must demonstrate that the defendant "intentionally and maliciously [failed] to perform his obligation." First Nat'l Bank of Jefferson Parish v. Dazet, 656 So. 2d 1110, 1113 (La. Ct. App. 1995). Bad faith entails "some interested or sinister motive and implies the conscious doing of wrong for

15

dishonest or morally questionable motives." Pellerin Constr., Inc. v. Witco Corp., 169 F. Supp. 2d 568, 585 (E.D. La. 2001)(quoting First Nat'l Bank of Jefferson Parish, 656 So. 2d at 1113).

We will assume, as the district court did, that Microsoft's end-user software licensing agreement constituted an adequate basis in fact for a contract between the parties. However, the complaint lacked any factual allegations regarding how Microsoft breached the terms of that agreement. Further, the plaintiffs failed to allege how Microsoft acted with sinister or morally questionable motives. Given these omissions, this Court cannot infer the essential elements of a bad faith breach of contract claim. Accordingly, we hold that the district court properly dismissed this claim.

C.

The plaintiffs' negligent and fraudulent misrepresentation claims also fail. To prove negligent misrepresentation, the plaintiff must demonstrate that (1) the defendant had a legal duty to supply correct information; (2) the defendant breached that duty; and (3) the plaintiff was damaged as a result of his justifiable reliance on the defendant's misrepresentations. See Hughes v. Goodreau, 836 So. 2d 649, 663 (La. Ct. App. 2002). Fraudulent misrepresentation occurs where the defendant misrepresents or suppresses the truth with the intent "either to obtain an unjust advantage for one party or to cause a loss or

16

inconvenience to the other." Ballard's Inc. v. North Am. Land Dev. Corp., 677 So. 2d 648, 650 (La. Ct. App. 1996). In order to prove fraudulent misrepresentation by silence or inaction, the plaintiff must demonstrate that the defendant had a duty to disclose. Id. at 650-51.

As the district court correctly concluded, the misrepresentation claims fail because the complaint is devoid of any facts that would give rise to a legal duty on the part of Microsoft to supply correct information regarding the incompatibility of its software with third-party applications. Indeed, we cannot infer the existence of such a duty from any of the plaintiffs' unrelated antitrust allegations. Therefore, we hold that the district court properly dismissed the misrepresentation claims.

D.

Finally, the plaintiffs contend that the district court erred in dismissing their redhibitory defect claim. "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use is so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased the object, if the buyer would have been aware of the vice or defect in the object." La. Civ. Code Ann. art. 2520 (West 2000). Furthermore, a plaintiff suing for a

17

redhibitory defect "must also prove that the defect existed at the time of the sale, and that [the plaintiff] afforded the seller an opportunity to repair the defect." Anzelmo v. Pelican Computer, 892 So.2d 659, 662 (La. Ct. App. 2004).

For computer software, Louisiana courts have found redhibitory defects where the product itself was defective or otherwise failed to perform to its specifications. See Anzelmo v. Pelican Computer, 892 So. 2d 659 (La. Ct. App. 2004); Photo Copy, Inc. v. Software, Inc., 510 So. 2d 1337, 1339-40 (La. Ct. App. 1987). In Anzelmo, the court concluded that a computer that experienced continual CD-ROM errors was "not useful for the purpose intended by the buyer" and, therefore, was defective within the meaning of article 2520. 892 So. 2d at 662. Similarly, in Photo Copy, the court held that a customized software program's failure to perform specific applications requested by the buyer constituted a redhibitory defect. 510 So. 2d at 1341.

The plaintiffs contend that the defect in this case was "Microsoft's ability to maintain control over third party [sic] application software's compatibility with the Windows operating system." Appellants' Reply Br. at 21. In other words, the plaintiffs allege that the Microsoft software is defective because Microsoft's anti-competitive practices inhibited the development of non-Microsoft software applications. These alleged practices do not constitute redhibitory defects within the meaning of article

18

2520. Unlike the plaintiffs in <u>Alzemo</u> and <u>Photo Copy</u>, the plaintiffs in this case cannot identify a function or application of Microsoft's operating software that failed to perform to its specifications. Accordingly, we hold that the district court properly dismissed the redhibitory defect claim.

## IV.

For the reasons stated above, the judgments of the district court denying the plaintiffs' motion to remand and granting the defendant's motion to dismiss are affirmed.

<u>AFFIRMED</u>

19