515 So.2d 457 (1987)
Bruce E. BICKHAM
v.
WASHINGTON BANK & TRUST COMPANY.
No. CA 86 0982.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Writ Denied December 11, 1987.
Richard F. Knight, Bogalusa, for plaintiff-appellant Bruce E. Bickham.
Dale E. Branch, Bogalusa, for defendant-appellee Washington Bank & Trust Co.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
GROVER L. COVINGTON, Chief Judge.
Plaintiff appeals the judgment which awarded him $840.50 plus interest and costs, but rejected all other demands against the defendants for interest paid by plaintiff on certain loans that was in excess of previously agreed-upon rates.
In view of the Supreme Court's holding in New Orleans & N.E.R. Co. v. Louisiana Const. & Imp. Co., 109 La. 13, 33 So. 51 (1902), to the effect that Louisiana law does not permit a party to recover voluntary *458 payments merely because payment was made under protest[1], we affirm the judgment of the trial court and adopt the Reasons for Judgment of the trial judge as our own and attach a copy hereto as Appendix A.
Costs of the appeal are to be borne by the appellant. All other costs are to be fixed as decreed in the trial court's judgment.
AFFIRMED.

APPENDIX A

Bruce B. Bickham and Bickham, Incorporated

v.

Washington Bank & Trust Co.

Docket No. 54,346, Division E

22ND Judicial District Court

Parish of Washington

State of Louisiana

REASONS FOR JUDGMENT
On January 23, 1974, Bruce Bickham and G.S. Adams, Jr., Vice-President of the Washington Bank & Trust Co., met and struck an agreement for Bickham to do his personal and corporate banking business with the Washington Bank & Trust Co. The specifics of the agreement were summarized the following day in a letter from Mr. Adams to Mr. Bickham:
(1) Effective January 24, 1974, Bickham's demand deposit accounts would not be charged a service charge;
(2) The Bank would loan Bickham and his corporations a maximum of $500,000.00;
(3) The Bank would lend the money at an interest rate of 7½% per annum;
(4) Bickham would have the right to repay the loans over a ten year period, with no restrictions on prepayment of any loan; and
(5) The Bank would loan Mr. Bickham the necessary funds for the construction of his home at 7½% per annum interest.
Pursuant to this agreement, Mr. Bickham transferred substantially all of his checking accounts to the Washington Bank & Trust Co. From January 25, 1974, to July 6, 1976, the Bank made eighteen loans to Mr. Bickham or his corporations at a stated rate of 7½% per annum interest. On October 29, 1974, a bank officer other than Mr. Adams, Jr., made a loan to Mr. Bickham at 9.75% interest. Mr. Bickham complained to Adams, and another note was promptly prepared and executed providing for 7½% interest. In September 1976 Adams, Jr., resigned his position at the Bank. Between October 16, 1976, and November 22, 1983, Mr. Bickham made twenty-three loans, with interest rates varying between 8.76% and fourteen per cent. A total of forty-two loans were made, with forty-one having been paid off at the time this suit was filed. Only one loan remains unpaid. It was made on February 7, 1974, for $42,499.99 at 7½% interest.
On November 17, 1978, Mr. Bickham was notified in writing that effective November 24, 1978, his interest rates would be elevated to 9½% per annum. Mr. Bickham protested this increase, and tried to obtain other satisfactory financing, to no avail. In addition to oral protest to the increased interest rate, Mr. Bickham refused to sign the bank form consenting to an interest rate increase. On January 23, 1984, Mr. Bickham and Bickham, Incorporated, filed *459 this suit seeking to recover all interest paid that exceeded 7½% per annum.
Mr. Bickham contends that the agreement with the Bank obligated the Bank to lend him money over a ten year span, at 7½% interest, with him having ten years to amortize the loans. The Court finds that there was no time specified over which the 7½% rate would be available to Mr. Bickham and his corporations. And it is quite obvious that the rate agreed upon could remain in effect for a reasonable period of time, and no more. The period over which the Bank made loans at 7½% was more than reasonable. Therefore, the original agreement ended with the July 6, 1976, note, and subsequent loans are governed by the language contained in the notes associated with each loan.
Bickham's agreement with the Bank did give him ten years to pay each 7½% loan; in spite of the fact many of the notes provided for payment on demand. The initial agreement provided for a ten year pay back; notations on several ledger cards confirmed this; and the payment history on an installment basis removes all doubt.
The relationship of the litigants is governed by bilateral contracts. The first such contract is represented by the oral agreement struck between Mr. Bickham and the Bank on January 23, 1974. Each promissory note subsequently executed by Mr. Bickham also represents a bilateral contract between Bickham and the Bank, but as such note or agreement might be modified or governed by the terms and conditions of the January 23, 1974, agreement. Elementary contract law dictates that bilateral contracts can be altered only with the consent of both parties. Unilateral changes are not acceptable or enforceable. At no time did Mr. Bickham consent to any change in the interest rates; therefore, the changes were unilaterally made by the Bank. The Bank made an agreement with Mr. Bickham, and should have lived up to its obligations, despite the changing economic conditions. The unilateral action by the Bank was unprofessional and legally wrong.
Although the Court finds what the Bank did to be improper, it is bound by the law expressed in New Orleans & N.E.R. Co. v. Louisiana Construction and Imp. Company, 109 La. 13, 33 So. 51, (1902). The issue raised in New Orleans & N.E.R. Co., supra, as well as in this case, is whether the payments made by the plaintiff, which he seeks to recover, "are to be considered in law involuntary payments, made under such circumstances of duress and intimidation as entitled the payer to recover those payments." N.O. & N.E.R. Co. v. Louisiana Const. and Imp. Co., supra, at 17, 33 So. 51.
The concurrence by Justice Dennis in DLJ of Louisiana # 1 v. Green Thumb, Inc., 376 So.2d 121 at 123 (La.1979), reviews the applicable law and New Orleans & N.E.R. Co. v. Louisiana Const. & Imp. Co., supra, by saying
... it appears that Louisiana law, absent exceptional circumstances, does not permit a party to recover his voluntary payments merely because he paid under protest. In New Orleans & N.E.R. Co. v. Louisiana Const. & Imp. Co., 109 La. 13, 33 So. 51 (1902) this Court held that a party who pays under protest does not make his payment any less voluntary, when the facts indicate no duress or mistake of fact ... The purpose of the rule is to expedite litigation where litigation is imminent, for a party cannot be permitted to `postpone the litigation by paying the demand in silence and afterwards suing to recover (the money) back.' New Orleans & N.E.R. Co., supra, [33 So.] p. 56. See also Hicks v. Levert, 19 La.App. 836, 140 So. 276 (1932).
In Hicks v. Levert, supra, the Court warned that if one in doubt is allowed to pay in protest and then sue to recover it back, there will be no end to litigation.
The Court in New Orleans & N.E.R. Co., supra, 109 La. at 22, 33 So. 51, lists circumstances in which payments are not voluntary payments, including "where the parties are not on equal terms, where the payer had no choice, where the only alternative was to submit to an illegal exaction or discontinuance of business or like circumstances." *460 However, the Court continues by saying "[b]ut where dispute arises and the debtor, who pays under protest, has at hand other means of immediate relief than by making payment, his act is not done under coercion, and his protest does not take the case out of the category of voluntary payments." The Court concludes by stating that if one has the opportunity to test the legality of a demand, he must do so at the time of the demand.
Bickham should have sought judicial relief before paying the excess interest. The Court was available, and a petition by Bickham seeking a declaratory judgment would have resulted in a prompt judicial disposition of the issues. He did not do so, and is now precluded from recovering the overcharge.
The Supreme Court, in New Orleans and N.E.R. Co. v. Louisiana Construction and Improvement Company, supra, while referring to other cases, made several quotes that are pertinent to this case:
"The court deem this a plain case. It is an established rule of law that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him and attempted to be enforced by legal proceedings, he cannot recover back the money, as paid by compulsion, unless there be fraud in the party enforcing the claim and a knowledge that the claim is unjust. And the case is not altered by the fact that the party, so paying, protests that he is not answerable and gives notice that he will bring an action to recover the money back. He has an opportunity, in the first instance, to contest the claim at law. He has, or may have, a day in court; he may plead and make proof that the claim on him is such as he is not bound to pay. * * * The party has an option whether to litigate the question, or submit to the demand and pay the money."
. . . . .
"There is no principle of law better settled than that money voluntarily paid with a knowledge of the facts cannot be recovered back. * * * If, in every instance in which a man is in doubt as to which is the safe course to pursue, he can pay under protest and then sue to recover back, it is difficult to see where litigation is to end. The law, therefore, wisely holds that a voluntary payment cannot be recovered back."
In Mays v. City of Cincinnati, 1 Ohio St. 268 [ (1853) ], it was said:
"The reason of the rule and its propriety are quite obvious when applied to a case of payment upon a mere demand of money unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other upon equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. * * * When he [the debtor] can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and, he cannot postpone the litigation by paying the demand in silence and afterwards suing to recover back."
However, as to the indebtedness occurred on February 16, 1974, that still has a current balance, plaintiff is obligated to pay only 7½% interest from the date of the filing of this suit until maturity, and the Washington Bank & Trust Co. is to pay over to plaintiff any overcharge he has paid on this loan since the filing of this suit, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
Judgment in accordance with these reasons will be signed when submitted.
Franklinton, Louisiana, this 18th day of March, 1986.
 /s/ A. Clayton James
 District Judge
NOTES
[1] Former Article 1856 of the Civil Code provided as follows:

If the violence used be only a legal constraint, or the threats only of doing that which the party using them had a right to do, they shall not invalidate the contract. A just and legal imprisonment, or threats of any measure authorized by law and by the circumstances of the case, are of this description.
This article was amended and reenacted by Acts 1984, No. 331, eff. Jan. 1, 1985; however, there was no substantive change in the law. Therefore, the long line of jurisprudence holding that a threat to exercise a legal right or institute civil suit is not "duress" continues to be applicable to these situations and is now codified in Article 1962. Thus a payment in response to this type of "threat" neither constitutes a vice of consent nor qualifies such payment as a thing not due under Civil Code Articles 2301 et seq.