STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 1698

LEISURE RECREATION & ENTERTAINMENT, INC.

VERSUS

FIRST GUARANTY BANK

FEB 1 1 2021

JUDGMENT RENDERED: _____

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number C625171 • Division 26

The Honorable Richard "Chip" Moore, Judge Presiding

* * * * * * *

| | |
|---|---|
| Andre G. Coudrain<br>Jaimie A. Polozola Gomez<br>Callie D. Casstevens<br>Hammond, Louisiana<br>   *and*<br>E.B. Dittmer II<br>Mandeville, Louisiana | ATTORNEYS FOR APPELLANT,<br>DEFENDANT/PLAINTIFF-IN<br>RECONVENTION—First Guaranty<br>Bank |
| Robert W. Barton<br>Ryan K. French<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLEE,<br>PLAINTIFF/DEFENDANT-IN-<br>RECONVENTION—Leisure<br>Recreation & Entertainment, Inc. |

* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WELCH, J.**

This matter returns to us on appeal and again involves cross-motions for summary judgment and a peremptory exception raising the objection of prescription in this suit for declaratory judgment involving the interpretation of the terms of a promissory note regarding an option as to the interest rate to be charged for certain years of the note. We reverse, render, and remand with instructions.

## FACTUAL AND PROCEDURAL HISTORY

As borrowed from our earlier opinion, **Leisure Recreation & Entm't, Inc. v. First Guar. Bank**, 2016-0281, 2016-0978 (La. App. 1st Cir. 8/17/17), 2017 WL 3573998, at *1-2 (unpublished), writ denied, 2017-1567 (La. 11/17/17), 229 So. 3d 932 (hereinafter, "**Leisure I**"), the facts and procedural history of this matter are as follows:

> On December 31, 1991, [Leisure Recreation & Entertainment, Inc. (Leisure)] entered into a Borrowing Agreement with First Guaranty Bank (the Bank) for a revolving line of credit, which was secured by a Promissory Note (the Note) in the amount of $1,600,000.00, executed on the same date. Also on the same date, the Bank advanced [Leisure] $1,370,000.00, which was to be repaid monthly over a 30-year period with the contracted interest rate varying as follows:
>
>> Years 1-5, the simple interest rate shall be fixed at 6.5% per annum; years 6-10, the simple interest rate shall be fixed at 7.5% per annum, and years 11-30, the simple interest rate shall be at the Citibank Prime, floating for minimum of one year or fixed for a period of not less than one year, nor more than five years at option of Borrower with floor and ceiling as shown above.
>
> The floor and ceiling were 4.00% and 12.00% per year, respectively. Leisure made the fixed monthly payments ... with the interest rate at 6.5% for years 1-5[,] and at 7.5% for years 6-10. On December 31, 2001, the beginning of year 11, the Bank continued to charge Leisure a 7.5% interest rate.
>
> On October 7, 2013, Leisure filed a petition for declaratory judgment against the Bank, alleging that the Note required the Bank to calculate interest at the prime

rate for years 11 through 30. Leisure further alleged that after notifying the Bank that it was improperly using a 7.5% interest rate, the Bank refused to correct the alleged error. Leisure sought a judgment declaring that in year 11 of the loan and thereafter, the Bank was required to calculate interest using the prime rate.... Leisure sought to have the court declare that the Bank erroneously computed the unpaid principal balance of its loan by approximately $425,000.00 and requested that the correct balance be computed in accordance with the Note's terms. Alternatively, Leisure sought a declaration that, to the extent the Bank miscalculated interest and the unpaid principal balance, Leisure was entitled to assert a defense to the Note's payment.

In response, the Bank filed exceptions of no cause of action and prescription [contending] that Leisure failed to state a cause of action because Leisure did not allege that it had ever exercised its option to have the Bank apply the prime rate. The Bank also alleged that there was no requirement that it adjust the interest rate without Leisure's consent and that the option to adjust the interest rate expired after a reasonable time. The Bank also contended that the action was prescribed on its face because actions arising under a promissory note are subject to a five-year prescriptive period pursuant to La. C.C. art. 3498, and Leisure failed to file suit until eleven years after it had the option to choose the prime rate.

(Footnote omitted).

After the Bank filed its objections, Leisure and the Bank entered into a consent order on July 20, 2015, whereby the parties agreed that Leisure would make disputed payments to the Bank under protest, with Leisure reserving its right to reclaim all such payments should the court ultimately rule in Leisure's favor.[1]

Thereafter, Leisure filed a motion for summary judgment and sought a declaration that the Bank was required to calculate the Note's outstanding balance using the prime interest rate beginning in year 11 of the loan and thereafter. Therein, Leisure admitted that it had failed to exercise the option to make an

---

[1] Leisure contends that it paid off the Note on June 28, 2015. Since that payment, Leisure alleges that it has made thirty-seven protested payments to the Bank—with a reservation of rights pursuant to the consent order—in the amount of $11,075.28 each. See **James v. LSU Health Scis. Ctr. Med. Ctr. of Louisiana at New Orleans**, 2001-1853 (La. App. 1st Cir. 11/8/02), 834 So. 2d 470, 473, writ denied, 2003-0214 (La. 4/21/03), 841 So. 2d 792 (A payment made *without* an express reservation of rights "is an acknowledgment of the debt owed and an admission of liability.").

election as to the interest rate as provided in the loan documents. The Bank responded with a cross-motion for summary judgment, seeking a declaration that because Leisure failed to exercise its option to elect the prime rate structure, the Bank's calculation of interest at 7.5% was proper, and Leisure's suit should be dismissed. **Leisure I**, 2017 WL 3573998 at *2.

Following a hearing on the Bank's exceptions and the parties' cross-motions for summary judgment, the trial court signed a judgment on March 1, 2016 that overruled the Bank's exceptions, granted the Bank's motion for summary judgment, denied Leisure's motion for summary judgment, and dismissed Leisure's suit. Thereafter, the Bank filed an application for supervisory writs challenging the trial court's overruling of its exceptions. Leisure appealed the trial court's judgment overruling the Bank's objections, granting the Bank's motion for summary judgment, and denying Leisure's motion for summary judgment.[2] **Leisure I**, 2017 WL 3573998 at *2.

## Leisure I

Leisure argued on appeal that the trial court erred in concluding that the Note did not mandate use of the prime rate to calculate interest in years 11-30, with the option of choosing a floating or fixed prime rate structure. In opposition, the Bank contended that the Note's language established a fixed 7.5% interest rate in years 6-30 and claimed that Leisure's option was the right to opt out of the 7.5% interest rate and opt into the prime rate. The Bank argued that because Leisure did not exercise its option, the interest rate remained at 7.5%, thus, Leisure had no cause of action based on its failure to exercise the option. **Leisure I**, 2017 WL 3573998 at *2.

---

[2] This court issued an interim order referring the writ to the same panel to which the appeal is assigned. See **Leisure Recreation & Entm't, Inc. v. First Guar. Bank**, 2016-0281 (La. App. 1st Cir. 6/17/16) (unpublished writ action).

4

After analyzing the text of the Note, the context of the interest provision, grammatical rules, canons of contract interpretation, this court held:

> [W]e construe the Note's interest provision to mean that after year 10, Leisure had the option to have its interest rate calculated according to the prime rate floating for a minimum of one year or to have its interest rate fixed at the prime rate at the date the option is exercised for a period of not less than one year, nor more than five years, with a floor and ceiling.

**Leisure I**, 2017 WL 3573998 at *4. We decreed that "[t]he Note did provide for the use of the prime rate as the interest rate for years 11-30[,] regardless of whether Leisure exercised the option." **Leisure I**, 2017 WL 3573998 at *10.

We then examined whether Leisure's failure to exercise the option nullified the interest provision, positing that "[t]he Note clearly does not provide that the interest rate would continue to be 7.5%, but it also does not state what would happen if Leisure failed to choose between the fixed or floating interest rate for a defined term." **Leisure I**, 2017 WL 3573998 at *4. We additionally noted that "the Note does not set forth how or when Leisure is to choose which interest rate and what term should be applied" and that "if Leisure were to choose a fixed prime rate for five years, for example, the Note does not specify what happens after that time period." We similarly remarked "if Leisure were to choose a floating interest rate for one year, the Note does not set forth what happens afterwards. The Note is unclear as to whether the fixed or floating prime rate is a one-time selection in year 11." **Leisure I**, 2017 WL 3573998 at *4.

Leisure contended that the option is an alternative obligation as described in La. C.C. art. 1808, which is "when an obligor is bound to render only one of two or more items of performance." Leisure argued "that when it failed to choose between the floating or fixed rate in year 11, the Bank had to demand that it make a choice, and only following an unanswered demand could the Bank choose which interest rate to apply," in accordance with La. C.C. art. 1810, which provides that

"[w]hen the party who has the choice does not exercise it after a demand to do so, the other party may choose the item of performance." **Leisure I**, 2017 WL 3573998 at *5. In opposition, the Bank argued that the Note is an option contract pursuant to La. C.C. art. 1933, which provides that "[a]n option is a contract whereby the parties agree that the offeror is bound by his offer for a specified period of time and that the offeree may accept within that time." The Bank averred that "it had no obligation or duty to provide Leisure with notice of the option to select the interest rate because the Note contained no language obligating it to do so." The Bank contended that pursuant to La. C.C. art. 1928, "because a time to accept or reject the option was not specified in the contract, the option lapsed after a reasonable time." **Leisure I**, 2017 WL 3573998 at *5.

After examining the parties' arguments, we held that "[t]he Note's interest provision is not an option contract because it is not an offer for which the Bank is bound for a specified period of time and which Leisure may accept within that time." We stated that "[t]he Note's interest provision is more similar to an alternative obligation because for years 11-30, Leisure could choose to pay interest at a floating rate or at a fixed rate for a definite period of time." **Leisure I**, 2017 WL 3573998 at *5. Citing La. C.C. art. 1810, this court noted that only after making a demand would the Bank have the option to choose the item of performance if the party with the choice, Leisure, did not exercise the option. **Leisure I**, 2017 WL 3573998 at *6. We further stated that "if the Bank is considered not to have made a demand on Leisure to choose an interest rate … La. C.C. art. 1810 is inapplicable." **Leisure I**, 2017 WL 3573998 at *6. After examining the evidence submitted in support of and in opposition to the cross-motions for summary judgment, we found "genuine issues of material fact as to **whether the Bank demanded that Leisure exercise its choice** and the **potential**

6

**right of the Bank to choose** the interest rate and term." **Leisure I**, 2017 WL 3573998 at *6 (emphasis added).

As to prescription, the Bank argued that the trial court erred in denying its objection because Leisure did not file suit within five years from the date the first disputed installment payment came due, in 2002, which is also the date the option in the Note matured. The Bank alternatively argued that Leisure's suit was prescribed because it did not exercise the option within a reasonable time. **Leisure I**, 2017 WL 3573998 at *8.

Citing La. C.C. art. 3498, which provides that "[a]ctions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years" and that "[t]his prescription commences to run from the day payment is exigible," this court determined that "the Note was payable in installments and there was no acceleration because there had been no default." **Leisure I**, 2017 WL 3573998 at *9. Noting that "[s]uit was filed on October 7, 2013," this court stated that "[t]hose installments affected by the interest provision in dispute were those due for years 11-30, with the first installment due on December 31, 2001." This court held that "[a]s to the installments due between December 31, 2001 and October 31, 2008, if La. C.C. art. 3498 applies, the five-year prescriptive period would run from the date each installment was due, unless Leisure can show an interruption or suspension." **Leisure I**, 2017 WL 3573998 at *9. We noted, however, that it was "unclear from the Note specifically when the choice [to exercise the option] had to be made, and, depending on what choice was made, whether it had to be made again." **Leisure I**, 2017 WL 3573998 at *9. "The Note is unclear as to whether the fixed or floating prime rate is a one-time selection in year 11." **Leisure I**, 2017 WL 3573998 at *4.

After examining the face of the petition, the Note, and the Borrowing Agreement, we held that "it is unclear when a prescriptive period commenced, if at

7

all. Therefore, the burden was on the Bank to show that Leisure's action was prescribed[,] and [the Bank] failed to meet this burden." **Leisure I**, 2017 WL 3573998 at *9. Accordingly, we affirmed the trial court's denial of the Bank's peremptory exception raising the objection of prescription. **Leisure I**, 2017 WL 3573998 at *10.

**Remand to the Trial Court**

Following remand, Leisure re-urged its motion for summary judgment, arguing that after numerous demands upon the Bank to elect the interest rate or term, the Bank failed to respond, disclaiming any right to choose the prime rate structure. Leisure contended that it was entitled to a judgment as a matter of law that adopted the permissible prime interest rate structure, recognized that the Note was paid off on June 28, 2015, and ordered the Bank to refund all subsequent payments made by Leisure.[3] In response, the Bank also re-urged its cross-motion for summary judgment and peremptory exception raising the objection of prescription. The Bank argued that there were no genuine issues of material fact that the Note was correctly computed at an interest rate of 7.5% from December 31, 2001 to July 20, 2015, and that pursuant to the voluntary payment doctrine, the Bank was precluded from having to repay, or give credit for, any past overpayments from Leisure. Alternatively, the Bank contended that all claims by Leisure relating to payments made from December 31, 2001 to October 7, 2008, were prescribed.

After a hearing, the trial court granted Leisure's motion for summary judgment, denied the Bank's motion for summary judgment, and overruled the Bank's peremptory exception urging prescription. The trial court issued reasons for ruling on February 14, 2019, and signed a judgment in accordance therewith on

_____

[3] The Bank opposed Leisure's re-urged motion for summary judgment.

8

March 29, 2019. In granting Leisure's motion for summary judgment, the trial court decreed:

> a. Leisure is entitled to judgment against [the Bank] as a matter of law;
>
> b. There is no genuine issue of material fact that the choice of selecting a Prime Rate structure (applicable to the Promissory Note in question) returned to Leisure and that Leisure's selection of a fixed, 1-year Prime Rate should be applied; and
>
> c. In accordance with Leisure's selection of said Prime Rate, there is no genuine issue of material fact that, on June 28, 2015, Leisure paid all indebtedness owed to [the Bank] on the Promissory Note.
>
> IT IS THEREFORE ORDERED that [the Bank] shall return to Leisure all sums it received from Leisure after June 28, 2015 (which amounts total $487,312.31), together with legal interest thereon from the date of judicial demand until paid.
>
> IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by [the Bank] be, and it [is] hereby, DENIED.
>
> IT IS FURTHER ORDERED that the Peremptory Exception of Prescription filed by [the Bank] be, and it is hereby, DENIED.

The Bank filed a motion for new trial of the trial court's March 29, 2019 judgment, arguing that the grant of summary judgment in favor of Leisure was contrary to the law and facts of the case and not supported by competent evidence.[4] Following a hearing, the trial court denied the Bank's motion for new trial in a judgment signed on August 15, 2019. The Bank suspensively appealed the August 15, 2019 judgment.

**APPELLATE JURISDICTION**

Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc.**, 2011-0520 (La. App. 1st Cir. 11/9/11), 79 So. 3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So. 3d 698. Our

---

[4] Leisure opposed the Bank's motion for new trial.

appellate jurisdiction extends to "final judgments," which are those that determine the merits in whole or in part. La. C.C.P. arts. 1841 and 2083. See **Van ex rel. White v. Davis**, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So. 2d 478, 483.

The established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment. **McKee v. Wal-Mart Stores, Inc.**, 2006-1672 (La. App. 1st Cir. 6/8/07), 964 So. 2d 1008, 1013, writ denied, 2007-1655 (La. 10/26/07), 966 So. 2d 583. However, the Louisiana Supreme Court has directed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits as well, when it is clear from the appellant's brief that he intended to appeal the merits of the case. **Carpenter v. Hannan**, 2001-0467 (La. App. 1st Cir. 3/28/02), 818 So. 2d 226, 228-29, writ denied, 2002-1707 (La. 10/25/02), 827 So. 2d 1153.

Furthermore, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Landry v. Leonard J. Chabert Med. Ctr.**, 2002-1559 (La. App. 1st Cir. 5/14/03), 858 So. 2d 454, 461 n.4, writs denied, 2003-1748, 2003-1752 (La. 10/17/03), 855 So. 2d 761, 761. Thus, an interlocutory denial of a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case. See **Moran v. G & G Const.**, 2003-2447 (La. App. 1st Cir. 10/29/04), 897 So. 2d 75, 83 n.4, writ denied, 2004-2901 (La. 2/25/05), 894 So. 2d 1148. The standard of review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. **Rao v. Rao**, 2005-0059 (La. App. 1st Cir. 11/4/05), 927 So. 2d 356, 361, writ denied, 2005-2453 (La. 3/24/06), 925 So. 2d 1232.

It is obvious from the Bank's appellate brief that it intended to appeal the judgment on the merits—the March 29, 2019 judgment granting Leisure's motion

10

for summary judgment, denying its motion for summary judgment, and overruling its objection of prescription. The granting of a motion for summary judgment is a final, appealable judgment. La. C.C.P. art. 1915(A)(3). The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. However, where there are cross-motions for summary judgment raising the same issues, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. **Pelle v. Munos**, 2019-0549 (La. App. 1st Cir. 2/19/20), 296 So. 3d 14, 18 n.2. Thus, we will treat the appeal accordingly.

## LAW AND DISCUSSION

In its first assignment of error, the Bank contends that the trial court erred in granting Leisure's motion for summary judgment and in denying its motion for summary judgment as "contrary to the law and evidence presented." A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 21, <u>writ denied</u>, 2018-1397 (La. 12/3/18), 257 So. 3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, a memorandum, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. <u>See</u> La. C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must

11

prove the essential facts necessary to carry the mover's burden. **Jenkins v. Hernandez,** 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 370, writ denied, 2020-00835 (La. 10/20/20), 303 So. 3d 315. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Crockerham v. Louisiana Med. Mut. Ins. Co.,** 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So. 3d 604, 608.

Once the motion for summary judgment has been properly supported by the moving party (*i.e.*, the mover has established the material facts through its supporting documentary evidence), and the mover has made a *prima facie* showing that the motion for summary judgment should be granted,[5] the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial: the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See **Babin v. Winn-Dixie Louisiana. Inc.,** 2000-0078 (La. 6/30/00), 764 So. 2d 37, 39; **TD Auto Fin., LLC v. Myles,** 2019-498 (La. App. 3rd Cir. 1/15/20), 289 So. 3d 108, 112. If the non-moving party fails to produce factual support in its opposition sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, La. C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. **Babin,** 764 So. 2d at 40.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but

---

[5] Generally, if the moving party will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). See also La. C.C.P. art. 966, Comments--2015, Comment (j). Here, however, the Bank bears the burden of proof at trial on its voluntary payment affirmative defense, and Leisure bears the burden of proof at trial on its waiver affirmative defense. Therefore, each party has the burden to prove its respective affirmative defense by a preponderance of the evidence. See **Womack Bros., Inc. v. Equip. Rental Servs., Inc.,** 399 So. 2d 661, 663 (La. App. 1st Cir. 1981), and further discussion, *infra*.

instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So. 3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So. 3d 1078. Simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. See **Franklin Credit Mgmt. Corp. v. Gray**, 2007-1433 (La. App. 4th Cir. 1/14/09), 2 So. 3d 598, 603, writ denied, 2009-0476 (La. 4/17/09), 6 So. 3d 795. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. **Kasem v. State Farm Fire & Cas. Co.**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So. 3d 6, 13. A fact is "material" when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. **Kasem**, 212 So. 3d at 13.

Appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC**, 255 So. 3d at 22.

## Voluntary Payment Doctrine

In its cross-motion for summary judgment, which was denied by the trial court, the Bank contended that the voluntary payment doctrine relieved the Bank of the obligation to repay Leisure. On appeal, the Bank argues that the trial court failed to apply the voluntary payment doctrine to estop Leisure from recovering payments that it voluntarily made to the Bank.

13

Louisiana law, absent exceptional circumstances, does not permit a party to recover his voluntary payments merely because he paid under protest. **DLJ of Louisiana No. 1 v. Green Thumb, Inc.**, 376 So. 2d 121, 123 (La. 1979) (Dennis, J., concurring). The voluntary payment doctrine was set forth by the Louisiana Supreme Court in **New Orleans & N. E. R. Co. v. Louisiana Const. & Imp. Co.**, 109 La. 13, 23, 33 So. 51, 55 (1902), and provides that "[i]t is an established rule of law that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him and attempted to be enforced by legal proceedings, he cannot recover back the money." The purpose of the voluntary payment doctrine is to expedite litigation where litigation is imminent, for a party cannot be permitted to "postpone the litigation by paying the demand in silence and afterwards suing to recover (the money) back." **DLJ of Louisiana No. 1**, 376 So. 2d at 123 (citing **New Orleans & N. E. R. Co.**, 33 So. at 56).

In **Bickham v. Washington Bank & Tr. Co.**, 515 So. 2d 457, 457-58 (La. App. 1st Cir.), writ denied, 515 So. 2d 1112 (La. 1987), this court held that a debtor of the defendant bank could not recover interest paid in excess of the amount previously agreed upon because the debtor had paid the excess voluntarily. In so doing, the court relied on the voluntary payment doctrine set forth by the Supreme Court in **New Orleans & N. E. R. Co.** and held that a party with knowledge of all the facts who voluntarily pays an excess amount cannot file a suit to recover that payment. **Bickham**, 515 So. 2d at 459-60 (citing **New Orleans & N. E. R. Co.**, 33 So. at 56). This court noted that a caveat to the voluntary payment doctrine exists if the debtor is under duress or the parties are on unequal terms, but where judicial relief was available and a petition seeking declaratory judgment would have resulted in a prompt judicial disposition of the issues, the fact that a party may be under threat of suit is of no moment. **Bickham**, 515 So. 2d at 460.

14

Voluntary payment is an affirmative defense to the merits of the underlying action. See **Hartman Enterprises, Inc. v. Ascension-St. James Airport & Transp. Auth.**, 582 So. 2d 198, 202 n.2 (La. App. 1ˢᵗ Cir.), writ denied, 582 So. 2d 195 (La. 1991). Affirmative defenses must be raised in the answer of the defendant.[6] See La. C.C.P. art. 1005. In its answer, the Bank raised the affirmative defense that Leisure was estopped from recovering any overpayments voluntarily made.[7] As the party asserting the affirmative defense of voluntary payment, the Bank has the burden of proving it by a preponderance of the evidence. See **Womack Bros. v. Equip. Rental Servs., Inc.**, 399 So. 2d 661, 663 (La. App. 1ˢᵗ Cir. 1981). Thus, as the mover, the Bank had to prove by a preponderance of the evidence that Leisure had "full knowledge of the facts" regarding the interest rate being applied to its loan and that Leisure had the option to exercise its choice of interest rate structure for years 11-30 of the Note. See La. C.C.P. art. 966(D)(1). See also **New Orleans & N. E. R. Co.**, 33 So. at 55.

In support of its motion for summary judgment, the Bank submitted: (A) the affidavit of Donna Hodges, the Bank's file room manager, with certain attachments—the Note; the Borrowing Agreement; the mortgage; a July 15, 2013 letter from Bank representative, Larry A. Stark, to Leisure's representative, Jerald L. Album; a July 8, 2013 letter from Mr. Album to Mr. Stark; and a May 24, 2013 letter from Mr. Stark to Leisure's representative, Lorie Sentell; (B) the affidavit of

---

[6] Where, however, an affirmative defense has not been pled by the defendant, but the plaintiff nevertheless fails to object to the introduction of evidence that bears on the affirmative defense and that is not pertinent to any issues raised in the pleadings, the pleadings have been considered to have been enlarged to include the affirmative defense, and the court can act as though the affirmative defense has been pleaded. **DLJ of Louisiana No. 1**, 376 So. 2d at 122 n.9.

[7] In its answer, the Bank pled the affirmative defense of estoppel, which is the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied on such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. **Dupont v. Hebert**, 2006-2334 (La. App. 1ˢᵗ Cir. 2/20/08), 984 So. 2d 800, 806, writ denied, 2008-0640 (La. 5/9/08), 980 So. 2d 695. The Bank also sought and was granted leave to file an amended answer, affirmative defenses, and a reconventional demand against Leisure. Therein, the Bank raised the affirmative defense of estoppel, and in its reconventional demand, argued that it was entitled to retain all prior payments voluntarily made by Leisure.

15

Dorothy Lynn Talley, the Bank's Assistant Vice President, Loan Operations Manager, with attached Transaction History Statement of Leisure's loan, covering December 1999 to November 2003; (C) Leisure's petition for declaratory judgment; and (D) eighty-nine payment-due notices selected from various years including 1998, 2002, 2004, and 2006-2013.

The Bank alleged that Leisure had possession of the loan documents setting forth the terms of repayment and that Leisure received monthly payment-due notices reflecting the loan balance. The Bank averred that Leisure thus possessed, at all times, sufficient information to know the interest rate that was being applied to its loan. According to the Bank, there was no evidence Leisure had a "mistaken belief" regarding the interest rate, but rather, the evidence showed that Leisure failed to review the terms of its borrowing agreement and recognize its rights under the Note to exercise its option to choose the interest rate structure in years 11-30. The Bank argued that it should not be held responsible for Leisure's failure to recognize the scheduled interest rate change in years 11-30.

Our *de novo* review of the evidence shows that the Bank proved its voluntary payment affirmative defense by a preponderance of the evidence. The Bank established that Jerry T. Saad, former CFO, Treasurer, and authorized agent of Leisure, and Michael F. Lofaso, vice-president of the Bank, executed the Borrowing Agreement and Promissory Note on December 31, 1991, which included the interest rate provision that Leisure had the option to elect a minimum one-year floating prime rate, or a fixed one-to-five-year prime rate (with floor and ceiling); that various payment-due notices were provided to Leisure showing the current balance of the loan as of the date of the notices; and that Leisure had the option to make an election as to the interest rate for years 11-30 of the loan. Accordingly, the Bank's supporting documentary evidence demonstrated that Leisure, upon execution of the loan documents, had "full knowledge of the facts"

regarding the interest rate being applied to its loan and that Leisure had the option to elect the prime interest rate structure to be applied in years 11-30 of the loan. Furthermore, the Bank established that Leisure received monthly payment-due notices reflecting the loan balance and made fixed, monthly payments at a fixed interest rate of 6.5% for years 1-5 of the loan, and at a fixed interest rate of 7.5% for years 6-10 of the loan. The Bank showed that beginning in January 2002—year 11 of the loan—Leisure continued to make fixed, monthly payments at an interest rate of 7.5% through June 28, 2015—year 24 of the loan. Accordingly, the Bank established that from January 2002 to June 2015, Leisure made voluntary, fixed monthly payments to the Bank at a fixed interest rate of 7.5%.

To defeat the Bank's motion for summary judgment on the voluntary payment affirmative defense, the burden shifted to Leisure to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the Bank is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1). In opposition to the Bank's motion, Leisure submitted the affidavit of Bonnie J. Bush, its chief financial officer ("CFO") as of January 1, 2013. Ms. Bush stated that the former owner and operator of Leisure, Mr. Fred Collins, Jr., died in 2006; his children inherited the business, and while they continued Leisure's business operations, Leisure had no full-time administrator until 2012, when Katherine L. Schneider assumed control of Leisure as its President, Chief Executive Officer ("CEO"), Secretary, and Treasurer, with Ms. Bush becoming CFO.

Ms. Bush stated:

> [W]e determined in late 2012 that [Leisure] was paying the [B]ank interest on a loan at approximately 7.5%. In early 2013, [Leisure's] former controlling officer finally provided [Ms.] Schneider and myself with [Leisure's] historical business records. At that time, we received for the first time, a copy of the First Guaranty loan documents from 1991. I noticed at that time that the

17

variable Prime interest rate stated in [Leisure's] copy of the loan documents was different from the fixed, 7.5% interest rate being charged to [Leisure].

...

As soon as we learned that [Leisure] was paying more than the Prime interest rate identified in the First Guaranty loan documents, we contacted [the Bank] to request additional information and the final, fully-executed copy of the loan agreement (which we did not even have). After I made several more inquiries to [the Bank] in the spring of 2013, [Leisure] received a letter from [the Bank's] vice-president on May 24, 2013. The letter indicated that [Leisure] had the option to adjust its interest rate to the Prime rate, but only prospectively. We immediately retained counsel to respond to the letter and dispute [the Bank's] interpretation of the loan agreement. About three months later, [Leisure] filed its lawsuit against [the Bank] to confirm the correct loan balance.

...

Prior to our discovery of the interest rate discrepancy in 2013, there is no indication that anyone at [Leisure] ever knew or realized that [Leisure] was paying an interest rate different than that specified in the loan agreement. Based upon the information that we had, as well as the monthly demands for payment received from [the Bank], [Leisure's] previous bookkeeper believed that [Leisure] was being charged and paying the correct contractual interest rate. The discrepancy went unnoticed largely due to the death of [Leisure's] original owner, the ensuing contested division of his estate, and a resulting period of managerial inactivity.

Leisure further asserted that despite its "discovery" of the incorrect interest rate calculation by the Bank, it could not stop making payments. At the time of the discovery in 2013, Leisure still owed the Bank money and because the Bank amortized the loan, its monthly payments stayed the same regardless of any change in interest rate. Also, the loan agreement potentially made Leisure liable for attorney's fees. Finally, Leisure continued to make payments until July 2015—when Leisure was certain it owed no more money under the loan agreement—and all subsequent payments were made pursuant to a consent judgment that reserved to Leisure the right to reclaim all disputed amounts.

In its reasons for denying the Bank's motion for summary judgment, the trial court stated:

> Pertaining to [the Bank's] assertion in its motion for summary judgment arguing that there is no genuine issue of material fact that Leisure is estopped from recovering any overpayment it made, arguing that all payments were voluntarily made with knowledge of all facts, the court finds that, based on all the evidence, the voluntary payment doctrine does not apply. **The court finds that Leisure mistakenly believed that the Note was being amortized in accordance with the interest rate specified in the Note[.]** *New Orleans & N. E. R. Co. v. Louisiana Const. & Imp. Co.*, 33 So. 51 (La. 1902). **This doctrine does not apply when the paying party does not know all of the relevant facts or pays sums under a mistaken belief.**

(Emphasis added).

A corporate body, as a legal entity, cannot itself have knowledge. If it can be said to have knowledge at all, it must be the imputed knowledge of some corporate agent. Knowledge of the proper corporate agent must be regarded, in legal effect, as the knowledge of the corporation. See **U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.**, 727 F.3d 343, 348 (5th Cir. 2013). Thus, the knowledge of a corporation's officers, directors, and other agents is imputable to the corporation. See **First Nat. Bank of Jefferson Par. v. Dazet**, 95-98 (La. App. 5th Cir. 5/30/95), 656 So. 2d 1110, 1114. The rationale for imputation is that a corporation's knowledge can only be acquired through individuals and that a principal ought not be better off acting through an agent than the principal would be if it acted directly. See and compare **Womack v. Travelers Ins. Co.**, 258 So. 2d 562, 566 (La. App. 1st Cir.), writ denied, 260 So. 2d 701 (La. 1972).

Leisure's evidence in opposition shows that the corporation was founded in 1991 by Fred J. Collins, Jr., who owned and operated Leisure until his death in 2006. In 1991, Jeffy T. Saad—former CFO and Treasurer of Leisure—executed the loan documents at issue in his capacity at the authorized agent of Leisure.

19

From the execution of the loan documents in 1991, until Mr. Collins's death in 2006, there is no doubt that Leisure clearly had "full knowledge of the facts" regarding the loan's interest rate because Leisure's authorized agent, Mr. Saad, executed the loan documents in his representative capacity on behalf of Leisure. Then from 2006, when Mr. Collins's children assumed control of Leisure, until the hiring of a full-time administrator in 2012, those parties in control of Leisure's operations argue they were ignorant of the scheduled interest rate change and option election for years 11-30 of the Note until their "discovery" of the Bank's incorrect interest rate calculation on the Note sometime in 2012. However, under the foregoing principles of the imputation of corporate knowledge, Leisure can be charged with Mr. Saad's knowledge and his acts done in his capacity as the authorized agent of Leisure, related to his function as its CFO and Treasurer. Mr. Collins's children and Leisure's administrator have imputed knowledge of all of Leisure's business operations, including the terms, conditions, and pending payments on the Note. See **U.S. ex rel. Vavra**, 727 F.3d at 348; **First Nat. Bank of Jefferson Par.**, 656 So. 2d at 1114; **Womack**, 258 So. 2d at 566.

There is no authority to indicate that Leisure's "full knowledge of the facts" of the loan's interest rate may not be imputed to any subsequent agents in control of Leisure's operations. If Leisure's subsequent agents had questions regarding the amounts due under the Note or the applicable interest rate, they could have immediately stopped making payments under the note; made payments under protest with a reservation or rights; examined Leisure's business records for copies of the 1991 loan documents; requested copies of the 1991 loan documents from the Bank, or filed suit—which was eventually done on October 7, 2013. However, prior to October 7, 2013, Leisure had at hand legal means for obtaining immediate relief, other than by making payments to the Bank. Its continued payment without seeking legal redress was done voluntarily. See **New Orleans & N. E. R. Co.**, 33

20

So. at 55. Until Leisure sought judicial relief, any payment of the excess interest was voluntary. See **Bickham**, 515 So. 2d at 460.

Furthermore, even though the summary judgment procedure is favored, it is not a substitute for trial and is often inappropriate for judicial determination of subjective facts such as knowledge. One reason is that these subjective facts call for credibility evaluations and the weighing of testimony. See **Hooker v. Wal-Mart Stores, Inc.**, 38,350 (La. App. 2nd Cir. 4/7/04), 870 So. 2d 1131, 1136, writ denied, 2004-1420 (La. 9/24/04), 882 So. 2d 1142. The law is well settled that the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in making its decision whether to grant or deny a motion for summary judgment. **Pumphrey v. Harris**, 2012-0405 (La. App. 1st Cir. 11/2/12), 111 So. 3d 86, 91. It is apparent that here, credibility calls and the weighing of evidence is essential for resolution of this issue. See **Pumphrey**, 111 So. 3d at 91.

Based on our discussion *supra*, we find that the Bank has met its burden and is entitled to summary judgment as a matter of law on its voluntary payment affirmative defense. See La. C.C.P. art. 966(D)(1). Leisure presented no evidence in opposition to raise any genuine issue of material fact showing that Leisure lacked full knowledge of the facts, was under duress, or on unequal terms with the Bank when it voluntarily made payments on the Note. See **Bickham**, 515 So. 2d at 460. When Leisure's agents had questions regarding the amounts due under the Note or the applicable interest rate, in order to stop the voluntary nature of its payments, Leisure's options were to stop making payments under the note; make payments under protest *with* a reservation or rights; or file a lawsuit—which was eventually done on October 7, 2013. Until Leisure sought judicial relief, any payment of the excess interest was voluntary. See **Bickham**, 515 So. 2d at 460. Thus, Leisure is not entitled to recover the payments it voluntarily made to the Bank from January 2002 to October 7, 2013. See **New Orleans & N. E. R. Co.**,

21

33 So. at 55-56; **DLJ of Louisiana No. 1**, 376 So. 2d at 123; **Bickham**, 515 So. 2d at 459-60.

Accordingly, we grant the Bank's motion for summary judgment on its voluntary payment affirmative defense and dismiss Leisure's claim for declaratory relief as to the interest it voluntarily paid the Bank between December 31, 2001 (the beginning of year 11 of the Note) and October 7, 2013 (the date Leisure filed suit). We reverse the portion of the trial court's judgment denying the Bank's motion for summary judgment on its voluntary payment affirmative defense. We further reverse the portion of the trial court's judgment ordering the Bank to return all sums received from Leisure after June 28, 2015. As to the indebtedness incurred on December 31, 1991, that still has a current balance, we render judgment ordering that the Bank return to Leisure any overcharge of interest in excess of the prime rate that Leisure has paid on the Note since the filing of its suit on October 7, 2013, together with legal interest thereon from date of judicial demand until paid. See, e.g., **Bickham**, 515 So. 2d at 460. We remand this matter to the trial court with instructions to hold a hearing to fix this specific amount and render judgment accordingly.

**Waiver/Relinquishment of Right**

In granting Leisure's motion for summary judgment, the trial court held that the Bank disclaimed any right to choose the prime rate structure. Accordingly, the trial court found that Leisure was entitled to judgment as a matter of law recognizing that the option to choose the prime rate structure returned to Leisure, adopting the permissible prime rate structure, recognizing that the Note was paid off on June 28, 2015, and ordering the Bank to refund all subsequent payments made to Leisure. On appeal, the Bank argues that at all material times, it believed that Leisure possessed the right to elect the applicable interest rate; thus, the Bank

could not intentionally relinquish a right that it at all times believed belonged to Leisure.

Because we find that Leisure is not entitled to recover the payments it voluntarily made to the Bank from January 2002 to October 7, 2013,[8] and are reversing the portions of the trial court's judgment denying the Bank's motion for summary judgment on the voluntary payment affirmative defense and ordering the Bank to return any overcharge of interest in excess of the prime rate that Leisure has paid on the Note since the filing of its suit on October 7, 2013, we pretermit discussion of whether the Bank waived its right to choose the prime rate structure and whether the choice reverted to Leisure. In **Leisure I**, we held that "[t]he Note did provide for the use of the prime rate as the interest rate for years 11-30[,] regardless of whether Leisure exercised the option." **Leisure I**, 2017 WL 3573998 at *10. In accordance with the express terms of the promissory note, the Bank shall calculate interest at the prime rate for years 11-30 of Leisure's loan. For years 11-30, the prime rate shall be floating for at least one year, and Leisure has the option at the end of each year to fix the prime rate for a period of not less than one year, nor more than five years. **Leisure I**, 2017 WL 3573998 at *10 (Crain, J., concurring).[9]

Because Leisure made voluntary payments at a fixed interest rate of 7.5% until October 7, 2013, Leisure is not entitled to recover any excess interest it paid to the Bank prior to filing suit. As set forth by this court in **Leisure I**, the Bank must calculate interest at the applicable prime rate for payments due on the loan from October 7, 2013, until paid in full. The prime rate shall be floating for at least one year, and Leisure has the option at the end of each year to fix the prime rate for a period of not less than one year, nor more than five years. For these

---

[8] See **New Orleans & N. E. R. Co.**, 33 So. at 55-56; **DLJ of Louisiana No. 1**, 376 So. 2d at 123; **Bickham**, 515 So. 2d at 459-60.

[9] This court agrees with this reasoning set forth in Judge Crain's concurrence.

reasons, we reverse the portion of the trial court's judgment granting Leisure's motion for summary judgment, decreeing that the choice of prime rate interest structure reverted to Leisure, and decreeing that Leisure paid all indebtedness owed to the Bank on the Note.[10]

## DECREE

We reverse the portion of the trial court's March 29, 2019 judgment denying the motion for summary judgment filed by the defendant/plaintiff-in-reconvention, First Guaranty Bank, as to the voluntary payment affirmative defense.

We reverse the portion of the trial court's March 29, 2019 judgment ordering the defendant/plaintiff-in-reconvention, First Guaranty Bank, to return all sums received from the plaintiff/defendant-in-reconvention, Leisure Recreation & Entertainment, Inc., after June 28, 2015.

We reverse the portion of the trial court's March 29, 2019 judgment granting summary judgment in favor of the plaintiff/defendant-in-reconvention, Leisure Recreation & Entertainment, Inc., decreeing that the choice of prime rate interest structure reverted to Leisure, and decreeing that Leisure paid all indebtedness owed to the Bank on the Promissory Note.

We render judgment in favor of defendant/plaintiff-in-reconvention, First Guaranty Bank, and against defendant/plaintiff-in-reconvention, First Guaranty Bank, granting the motion for summary judgment filed by the Bank as to the voluntary payment affirmative defense, and dismissing Leisure's claim for declaratory relief as to the interest it voluntarily paid the Bank between December 31, 2001 and October 7, 2013.

---

[10] In its second assignment of error, the Bank contends that the trial court erred in overruling its re-urged peremptory exception raising the objection of prescription. We pretermit discussion of this assignment of error. It is moot in light of our grant of summary judgment in favor of the Bank on its voluntary payment affirmative defense and dismissal of Leisure's claim for declaratory relief as to its entitlement to interest it voluntarily paid the Bank between December 31, 2001 and October 7, 2013.

As to the indebtedness incurred on December 31, 1991 that still has a current balance, we render judgment ordering that the defendant/plaintiff-in-reconvention, First Guaranty Bank, return to plaintiff/defendant-in-reconvention, Leisure Recreation & Entertainment, Inc., any overcharge of interest in excess of the prime rate that Leisure has paid on the Promissory Note since the filing of its suit on October 7, 2013, together with legal interest thereon from date of judicial demand until paid. We remand this matter to the trial court with instructions to hold a hearing to fix this specific amount and render judgment accordingly.

We reverse the trial court's August 15, 2019 judgment denying the motion for new trial filed by the defendant/plaintiff-in-reconvention, First Guaranty Bank.

All costs of this appeal are assessed equally between the parties.

**REVERSED, RENDERED, AND REMANDED WITH INSTRUCTIONS.**